**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

EKATERINI KOTTARAS,

     Plaintiff,

        v.                           Civil Action No. 08-1832 (JEB)

WHOLE FOODS MARKET, INC.,

     Defendant.

---

**MEMORANDUM OPINION**

     Plaintiff Ekaterini Kottaras is a resident of Los Angeles County and a consumer of premium, natural, and organic products.  She is a patron of Defendant Whole Foods Market, Inc. and also shopped at Wild Oats Markets before the two grocery chains merged.  Believing this merger unlawfully raised prices on certain products, she brought this antitrust action against Whole Foods.  She subsequently moved, under Federal Rule of Civil Procedure 23, to certify a class of Los Angeles County Whole Foods shoppers.

     Now that the parties have both submitted briefs and offered expert testimony at a hearing on this Motion, the Court believes class certification is not appropriate here for three central reasons.  First, an essential element of Plaintiff's case – that is, injury to individual members of the class – cannot be proven through classwide evidence; the action, accordingly, does not satisfy Rule 23(b)(3)'s requirement that common questions predominate over individual ones.  Second, the proposed methodology of Plaintiff's expert is too vague for the Court to rigorously analyze.  Finally, Plaintiff's alternative request for certification under Rule 23(b)(2) is easily rejected as equitable relief in this case is merely incidental to monetary damages.

I.      **Background**

On August 28, 2007, Whole Foods acquired Wild Oats, another retailer specializing in premium, natural, and organic foods.  See Compl., ¶ 1.  A couple of months before the merger was consummated, the Federal Trade Commission sought to enjoin it on the ground that it would create monopolies in eighteen cities where Whole Foods and Wild Oats were the only premium, natural, and organic supermarkets (PNOS).  The FTC's motion for a preliminary injunction was denied by Judge Paul Friedman of this District because the FTC had not shown a likelihood of success on the merits.  FTC v. Whole Foods Market, Inc., 502 F. Supp. 2d 1, 49-50 (D.D.C. 2007).  His decision was based on a finding that the relevant product market was broader than PNOS and at least included "the retail sale of food and grocery items in supermarkets."  Id. at 19; see also FTC v. Whole Foods Market, Inc., 548 F.3d 1028, 1033 (D.C. Cir. 2008) (stating that district court concluded that PNOS were not distinct market because they "compete within the broader market of grocery stores and supermarkets").

The D.C. Circuit reversed this decision and remanded the case, holding that the district court's decision to limit its market analysis to marginal customers was error.  See Whole Foods, 548 F.3d at 1041.  Because core consumers – *i.e.*, those who "demand[] exclusively a particular product or package of products" – can constitute a submarket worthy of antitrust protection, the D.C. Circuit determined that the FTC may have "show[n] a likelihood of success sufficient, using the sliding scale, to balance any equities that might weigh against injunction."  Id.  In May 2009, following the remand, the FTC and Whole Foods entered into a consent agreement under which a Trustee of Whole Foods would divest itself of 32 locations, none of which was in Los Angeles    County.    See    Decision    and    Order,    available    at http://www.ftc.gov/os/adjpro/d9324/090529wfdo.pdf (last visited Jan. 23, 2012).  The FTC then

voluntarily dismissed the case, and the action was terminated.  See Civil Action No. 07-1021, ECF No. 192.

In January 2010, Plaintiff Kottaras brought this suit alleging that the merger foreclosed competition in the PNOS market solely in Los Angeles County, leading to supra-competitive prices there.  See Compl.  Specifically, she alleges that Whole Foods's acquisition of Wild Oats substantially lessened competition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18 (Count I), created an unlawful monopoly in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (Count II), and constituted an unlawful agreement in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14 (Counts III and IV, respectively).  See Compl., ¶ 2.  Pursuant to Federal Rule of Civil Procedure 23, Plaintiff has now moved to certify a class of all persons who purchased "premium, natural, or organic products from Whole Foods supermarkets in California's Los Angeles County" between the date of the merger and the date of this Court's ruling.  See Mot. at 1.

In support of her Motion, Plaintiff offers the report of her expert, Dr. Oral Capps, Jr., a professor of Agricultural Economics and Co-Director of the Agribusiness, Food, and Consumer Economics Research Center at Texas A&M University.  See Mot., Exh. 1 (Expert Report of Dr. Capps), ¶ 1.  Among other things, Capps was asked to determine "if, from an economic perspective, evidence that is predominantly common to members of the proposed class can be used to determine … if members of the proposed class were adversely impacted by the alleged illegal conduct of Whole Foods."  Id., ¶ 8. Capps assumes, for purposes of his analysis, that "the merger between Whole Foods and Wild Oats … allowed Whole Foods to charge supra-competitive prices to the detriment of consumers."  Id.

Capps concludes that both the <u>existence</u> of damages and the <u>amount</u> of damages – two distinct but related matters – can be determined using classwide evidence.  According to Capps's report, damage occurs when a customer pays more for a product at Whole Foods than he would have paid but for the merger.  <u>See id.</u>, ¶ 53.  With respect to proving the existence of damages, Capps relies primarily on the fact that Whole Foods's prices are uniform across Los Angeles County in any given week to opine that adverse impact can be shown with evidence common to the class.  <u>Id.</u>, ¶ 38-43.   He suggests that by analyzing pricing data for each stock keeping unit (SKU) – the units used to designate a specific size of a specific brand of a specific product – he will be able to show that members of the class were injured by the merger.  <u>Id.</u>, ¶ 48.  Based on the fact that the experts in the FTC's challenge of the merger considered the effect of competition on pricing, Capps states that "it seems reasonable to believe any anticompetitive impact of the merger would take the form of increased register prices."  <u>Id.</u>, ¶ 46; <u>see also id.</u>, ¶ 47.

With respect to the amount of damages, Capps proposes to create an econometric model to isolate the effect of the merger on the prices of products sold by Whole Foods.  <u>See</u> Class Certification Hearing Transcript (Trans.) at 16-22.   Using a regression analysis that controls for other factors that may affect prices, Capps states that he can determine how much of the overcharge for a particular product was due to the merger.  <u>See</u> Capps Expert Report, ¶ 59. Multiplying the per-unit amount of overcharge due to the merger by the number of units sold during the relevant period will provide the total overcharge to members of the proposed class for that particular item.  <u>Id.</u>  This regression analysis would have to be repeated for the thousands of products that account for most or all of Whole Foods's sales.  <u>Id.</u>  Then the overcharge for all products would be combined to determine the total adverse impact of the merger on members of

the proposed class. Id. At his deposition, Capps stated that the total would be divided "'by the aggregate measure of customer count [to get] a dollar figure per member of the class,'" though Plaintiff now denies that Capps intends to use that method to calculate individual damages. Trans. at 75-76 (quoting Capps Dep. at 93); Reply at 12 (arguing Defendant mischaracterizes Plaintiff's expert by stating that he "would simply ascribe the same overcharge injury to all class members, regardless of whether a particular class member actually bought the specific item that was the subject of the overcharge").

Capps's position, unsurprisingly, is not shared by Whole Foods's expert, Dr. Janusz Ordover. Ordover, a professor of economics at New York University and former Deputy Assistant Attorney General for Economics at the Antitrust Division of the U.S. Department of Justice, believes that injury to individual class members cannot be proven using common evidence. See Trans. at 111. This conclusion is based on two central premises. First, Whole Foods shoppers buy "highly differentiated baskets of products," a fact that Capps acknowledges. See Opp., Exh. A (Expert Report of Dr. Ordover), ¶ 11; Capps Dep. at 64-65, 88-89. Second, Ordover's study of price-change information across all legacy Whole Foods stores operating in Los Angeles County showed that price movements after the merger were heterogeneous, and "the majority of the products sold at Whole Foods have decreased in price" in the post-merger period. Ordover Expert Report, ¶ 29 (emphasis in original). In light of these facts, Ordover concludes that determining which of Whole Foods's customers was harmed by the merger would require an individualized inquiry into "the items actually purchased by each consumer and the changes in price of each item." Id., ¶ 36. Ordover believes Capps's proposed methodology is flawed because it cannot reliably "determin[e] the fact of impact or damages suffered by

individual consumers" and because it ignores products that dropped in price as a result of the merger.  Id., ¶ 11.

In order to evaluate the competing experts' positions on class certification and explore the issues raised by each side, the Court held a hearing on December 7, 2011, limited to the direct and cross-examination of Capps and Ordover.  The Court also heard brief oral argument from counsel as to the legal significance of the testimony presented.

## II.    Legal Standard

To certify a class under Rule 23, Plaintiff must show that the proposed class satisfies all four requirements of Rule 23(a) and one of the three Rule 23(b) requirements.  See Fed. R. Civ. P. 23(a)-(b); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548, 2551 (2011).  Rule 23(a) states that a class may only be certified if (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative are typical of those of the class ("typicality"), and (4) the class representative will fairly and adequately protect the interests of the class ("adequacy of representation").   The moving party must show, in addition, either that (1) the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent adjudications, (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  See Fed. R. Civ. P. 23(b)(1)-(3).

In deciding whether to certify a class under Rule 23, a district court must undertake a "rigorous analysis" of whether the requirements of the Rule have been satisfied.   General

Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982).  "Rule 23 does not set forth a mere pleading standard." Wal-Mart, 131 S. Ct. at 2551.   Rather, the party seeking class certification bears the burden of "affirmatively demonstrat[ing] his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. (emphasis in original).  The Court's analysis of whether a class may be certified "frequently … entail[s] some overlap with the merits of the plaintiff's underlying claim," requiring the Court to "probe behind the pleadings before coming to rest on the certification question."  Id.; see also Falcon, 457 U.S. at 160 ("'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" (internal citation omitted)).   Because a decision on class certification "'requires a thorough examination of the factual and legal allegations,' [Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154,] 166 [(3rd Cir. 2001)], the court's rigorous analysis may include a 'preliminary inquiry into the merits,' id. at 168, and the court may 'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take,' id. at 166 (quoting 5 Moore's Federal Practice, § 23.46[4]) (quotation marks omitted)." In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 317-18 (3rd Cir. 2008).

### III.    Analysis

The battle in this case is waged over Rule 23(b).  Although 23(a) factors are typically considered first, Whole Foods spends minimal time addressing them.  Instead, it principally argues that Plaintiff has failed to satisfy any of the 23(b) requirements.  Plaintiff only seeks to certify the class under 23(b)(2) and 23(b)(3).  Since 23(b)(3) is at the heart of the dispute

between the parties, the Court will address that first and then turn to 23(b)(2).  As the Court ultimately finds that Plaintiff has not satisfied either, her Motion cannot succeed.

    A.  Rule 23(b)(3)

For a class action to be maintained under Rule 23(b)(3), the court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The twin requirements of 23(b)(3) are commonly referred to as predominance and superiority.  See In re Hydrogen Peroxide, 552 F.3d at 310.  The 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).  It is "far more demanding" than Rule 23(a)'s commonality requirement.  Id. at 623-24.

There is little guidance from the D.C. Circuit with respect to the standard for certifying a class under this subsection.  In 2007, an antitrust case came before another court in this District in which the plaintiffs sought to certify the class of buyers of a particular hypertension drug under Rule 23(b)(3).  See In re Nifedipine Antitrust Litigation, 246 F.R.D. 365 (D.D.C. 2007).  In that case, the plaintiffs alleged that an exclusive distribution agreement between one producer of a generic version of the drug and its only competitor kept the generic price artificially high in violation of the Sherman Act.  Id. at 367-68.  Describing the standard for assessing whether common questions predominated over individual ones, the Court stated that "plaintiffs need only present a 'colorable method by which they intend to prove impact on a predominantly common basis.'"  Id. at 369 (quoting In re Vitamins Antitrust Litigation, 209 F.R.D. 251, 257 (D.D.C. 2002)).  Furthermore, the Court indicated it "must refrain from either deciding the merits of the plaintiff's claims or indulging in a duel 'between opposing experts.'"  Id. (quoting In re

Cardizem CD Antitrust Litigation, 200 F.R.D. 297, 311 (E.D. Mich. 2001)).  Under this lenient standard, the District Court found that Rule 23(b)(3) was met and certified the class.

The D.C. Circuit denied the defendants leave to file an interlocutory appeal in that case, stating that "the propriety of a district court's refusal to scrutinize the probative value of evidence proffered to demonstrate the requirements of Fed. R. Civ. P. 23 are satisfied is well-settled."  In re Nifedipine Antitrust Litigation, et al., 2009 U.S. App. LEXIS 3643, at *2 (D.C. Cir. 2009).  The opinion cites to Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974), for this proposition.  This citation presumably refers to the Court's statement in Eisen that "nothing in either the language or history of Rule 23 … gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."  Id.  This language may not be as helpful as Plaintiff may wish.

The Supreme Court just last year in Wal-Mart held that a court's assessment of whether class certification is proper under Rules 23(a) and (b) frequently entails some analysis of "the merits of the plaintiff's underlying claim."  See 131 S. Ct. at 2551.  The Court, moreover, specifically noted that the above-quoted statement from Eisen "is sometimes mistakenly cited to the contrary."  Id. at 2552 n.6.  It explained that, in Eisen, "the judge had conducted a preliminary inquiry into the merits of a suit, not in order to determine the propriety of certification under Rules 23(a) and (b), … but in order to shift the cost of notice required by Rule 23(c)(2) from the plaintiff to the defendant."  Id.  To the extent the statement goes beyond that issue, "it is the purest dictum and is contradicted by our other cases."  Id.  The Court went on to give an example of a type of case where "Rule 23(b)(3)'s requirements … would often be an insuperable barrier to class certification" were plaintiffs not permitted to offer proof on

overlapping merits issues.  Id.  Wal-Mart thus makes clear that it is appropriate – and indeed necessary – in some circumstances to "consider[] a merits question at the Rule 23 stage."  Id.

In light of this explanation, it is manifest that Eisen does not stand for the proposition that district courts should not scrutinize the probative value of evidence offered with respect to whether the requirements for class certification have been met.   On the contrary, the Supreme Court requires a "rigorous analysis," Falcon, 457 U.S. at 161, and a preliminary inquiry into the merits when necessary to the Rule 23 certification inquiry. Wal-Mart, 131 S. Ct. at 2551.  In re Nifedipine's low hurdle for satisfying Rule 23(b)(3)'s predominance requirement now seems inconsistent with what the Supreme Court has articulated.  See In re Nifedipine, 246 F.R.D. at 369 (to demonstrate that injury can be proved on class-wide basis, plaintiffs need only propose method for so doing that is not "'so insubstantial as to amount to no method at all.'" (quoting In re Potash Antitrust Litigation, 159 F.R.D. 682, 697 (D. Minn. 1995))).

Having rejected the In re Nifedipene standard, the Court must look more carefully at common impact.  In order to find that the predominance prong of 23(b)(3) has been met, the Court must conclude that "the fact of antitrust violation and the fact of antitrust impact can[] be established through common proof."   In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 20 (1st Cir. 2008); see also Trombley v. National City Bank, 2011 WL 5986484, at *10 (D.D.C. 2011) (courts in this District have found common issues to predominate when there is "'generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member['s] individual position." (quoting Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd., 246 F.R.D. 349, 359 (D.D.C. 2007) (internal quotations and citations omitted)); Newton, 259 F.3d at 172 ("If proof of the essential elements of the cause of action requires individual treatment, then class certification

is unsuitable."). Evidence is considered "common" to the class if the same evidence can be used to prove an element of the cause of action for each member. See Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005). If, however, members of the proposed class would need to present evidence that varies from person to person, the matter to be proved is considered an individual question. Id. Because "the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual," a court considering the predominance prong of 23(b) "must formulate some prediction as to how specific issues will play out." Id.; see also In re Hydrogen Peroxide, 552 F.3d at 317 ("[T]he court may 'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'" (citing Newton, 259 F.3d at 166)).

Ultimately, the Court finds that individual, rather than common, evidence is required to show adverse impact to the class here and that, in any event, Plaintiff's expert's methodology is too vague to support her claims.

### 1. *Adverse Impact*

Although Plaintiff briefs several matters in relation to Rule 23(b)(3) – e.g., predominance of common questions as to market definition, market power, and quantification of damages – the dispute between the parties focuses on one key issue: whether common or individual questions predominate as to adverse impact. See Mot. at 15-35; Opp. at 24-37; Reply at 12-21; Surreply at 2-4. Adverse impact, in the context of this case, requires a showing of monetary loss attributable to the anti-competitive aspect of the merger between Whole Foods and Wild Oats. See Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990). Plaintiff need not offer evidence as to the amount of damages at this stage; she must simply show that the fact of damage can be proven using common evidence. See In re Hydrogen Peroxide, 552 F.3d at 311-12

("Plaintiffs' burden at the class certification stage is not to prove the element of antitrust impact, although in order to prevail on the merits each class member must do so.  Instead, the task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members."); In re New Motor Vehicles, 522 F.3d at 28 (class action can be limited to liability, leaving the amount of damages for later individual determination, but "establishing liability … still requires showing that class members were injured at the consumer level."); In re Ins. Brokerage Antitrust Litigation, 579 F.3d 241, 269 (3rd Cir. 2009) (it suffices for class certification "that the element of antitrust injury – that is, the fact of damages – is susceptible to common proof, even if the amount of damage that each plaintiff suffered could not be established by common proof"); Johnson v. District of Columbia, 248 F.R.D. 46, 57 (D.D.C. 2008) ("[T]he mere existence of individual damages issues in a Rule 23(b)(3) class does not cause individual issues to predominate over common issues on liability or causation." (citing Eubanks v. Billington, 110 F.3d 87, 96 (D.C. Cir. 1997)).

A number of circuits have held that plaintiffs must be able to show that every member of the class was injured as a result of the defendant's unlawful conduct in order to certify the class. See Bell Atl. Corp. v. AT&T Corp., 339 F.3d 294, 302 (5th Cir. 2003) ("[W]here fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance."); In re New Motor Vehicles, 522 F.3d at 28 (plaintiff's theory "must include some means of determining that each member of the class was in fact injured, even if the amount of each individual injury could be determined in a separate proceeding"); Bogosian v. Gulf Oil, 561 F.2d 434 (3rd Cir. 1977) (impact of antitrust violation on class may be made on common basis, "so

long as the common proof adequately demonstrates some damage to each individual"), abrogated on other grounds by Bell Atlantic Corp. v. Twombly, 561 U.S. 544 (2007).

Plaintiff disputes that all class members need to be injured to certify the class.  In support of her argument, she points to Kohen v. Pac. Inv. Mgmt. Co., 571 F.3d 672 (7th Cir. 2009). Kohen states that it is almost inevitable that a class will include persons who have not been injured by the defendant's conduct "because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown." Id. at 677.  The possibility that some members of the proposed class have not been injured "does not preclude class certification." Id. (citation omitted).  Nevertheless, "a class should not be certified if it is apparent it contains a great many persons who have suffered no injury at the hands of the defendant." Id. (citations omitted).  In Kohen, the court determined that class certification was appropriate even though some members of the proposed class may have been net gainers, because there was reason to believe that "probably not many" were. Id. at 678.

The other cases on which Plaintiff relies similarly make clear that a party moving for class certification must, at minimum, establish "widespread injury to the class." See In re Nw. Airlines Antitrust Litigation, 208 F.R.D. 174, 223 (E.D. Mich. 2002) ("[F]or purposes of determining whether to certify a class, the 'impact' element of an antitrust claim need not be established as to each and every class member; rather, it is enough if the plaintiffs' proposed method of proof promises to establish 'widespread injury to the class' as a result of the defendant's antitrust violation."); In re NASDAQ Market-Makers Antitrust Litigation, 169 F.R.D. 493, 523 (S.D.N.Y. 1996) ("Even if it could be shown that some individual class members were not injured, class certification, nevertheless, is appropriate where the antitrust

violation has caused widespread injury to the class").  In the context of the predominance inquiry in this case, this means that Plaintiff must proffer a method that will use common evidence to show that a substantial majority of the members of the proposed class were injured by – or, put another way, that there was widespread injury to the class from – Defendant's unlawful conduct.

Plaintiff, however, has failed to satisfy the very standard she herself sets forth.  Even if the regression analyses Capps proposes to perform show that the price of some products increased as a result of the merger, they fail to take into account any <u>benefits</u> customers may have received thereby.  Indeed, Capps acknowledged at the hearing that, in assessing the impact of the merger, he will only include products that increased in price due the merger in his calculation of total damages.  Trans. at 44-46.  In other words, he will not offset any losses customers suffered from such overcharges with the gains customers received from products that dropped in price because of Whole Foods's acquisition of Wild Oats.  <u>Id.</u>  There is thus no way of knowing what percentage of the proposed class ultimately suffered any net injury.  This is hardly some speculative hypothetical since, according to Ordover's inflation-adjusted analysis, "the <u>majority</u> of products <u>declined</u> in price after the merger."  Ordover Expert Report, ¶ 24 (emphasis added); <u>see also</u> <u>id.</u>, ¶¶ 25-39, Exh. 6-10.  While Ordover has not evaluated which of these price reductions are attributable to the merger, the most likely conclusion is that many customers <u>saved</u> money on certain products due to efficiencies created by the merger.  <u>See</u> Trans. at 132, 157.

Several cases also suggest that Capps's approach to assessing damage – *i.e.*, aggregating losses from the merger without crediting gains – is incorrect.  <u>Kohen</u>, the case on which Plaintiff relies for another principle concerning class certification, indicates that gains from a defendant's unlawful conduct must be counted against losses.  <u>See</u> 571 F.3d at 678-79.  The opinion in that

case speaks of "net gainers" – those who will not be able to prove damages because they have obtained "off-setting profits" from the defendant's alleged activity.  Id. at 676, 678.  Another court similarly determined that a class member would only be injured by an unlawful environmental charge for uniform rentals if the charge "inflated its net payments for textile rental services above the competitive (or 'but-for') price."  Exhaust Unlimited, Inc. v. Cintas Corp., 223 F.R.D. 506, 513 (S.D. Ill. 2004) (emphasis added).  The court concluded that individual questions predominated in that action because "the impact of total invoice price would not be measureable without considering the particular mix of products and services covered by each invoice."  Id. at 514 (citation omitted).

Not only does Plaintiff's expert fail to account for the benefits of the merger (contrary to law and logic), but Plaintiff also goes so far as to move to strike Ordover's report and testimony because he contends (correctly, as it turns out) that any assessment of injury must offset merger-related price decreases from merger-related price increases.  As a threshold matter, it is unclear whether a full analysis of Ordover's report and testimony is even appropriate at this stage.  Compare Am. Honda Motor Co., Inc. v. Allen, 600 F.3d 813, 815-16 (7th Cir. 2010) (where expert's opinion is critical to class certification, district court must conclusively rule on any challenge to expert's qualifications before deciding class certification question) with In re Zurn Pex Plumbing Prod. Liab. Litigation, 267 F.R.D. 554, 556 (D. Minn. 2010) ("Several district courts in the Eighth Circuit have declined to engage in a full Daubert analysis at the class certification stage, considering only whether the expert testimony is helpful in determining whether the requisites of class certification have been met.").  Assuming it is, Plaintiff's argument that Ordover's opinion relies on a "long-discredited legal standard" is simply incorrect.  See Mot. to Strike at 3.

Plaintiff contends that Ordover's opinion cannot be helpful to the Court because it is incompatible with the Supreme Court's ruling in <u>United States v. Philadelphia Nat'l Bank et al.</u>, 374 U.S. 321 (1963).  <u>See</u> Mot. to Strike at 13.  In that case, the Court held that a proposed bank merger in Philadelphia violated antitrust laws because it would substantially lessen competition. <u>Philadelphia Nat'l Bank</u>, 374 U.S. at 355-60, 365.  The banks seeking to merge had asserted that the merger was justified because "the increased lending limit of the resulting bank will enable it to compete with the large out-of-state bank, particularly New York banks, for very large loans." <u>Id.</u> at 370.  The Court, however, rejected this argument, holding that "anticompetitive effects in <u>one market</u> [cannot] be justified by procompetitive consequences in <u>another</u>."  <u>Id.</u> (emphasis added).  In other words, a merger that substantially decreases competition in one place – injuring consumers there – is not saved because it benefits a separate group of consumers by creating competition elsewhere.  The issue here, however, is not whether to offset harms in one market with benefits in another, but whether to count benefits against harms in the <u>same</u> market – indeed in the same shopping basket.  <u>Philadelphia National Bank</u> does not address that question, and the cases that do indicate that the benefits must be factored into assessments of harm.  <u>See, e.g.</u>, <u>Los Angeles Mem'l Coliseum Com'n v. National Football League</u>, 791 F.2d 1356, 1367 (9th Cir. 1986) ("An antitrust plaintiff may recover only to the 'net' extent of its injury; if benefits accrued to it because of an antitrust violation, those benefits must be deducted from the gross damages caused by the illegal conduct.").  Plaintiff's Motion to Strike is thus an unsuccessful gambit here.

Since benefits must be offset against losses, it is clear that widespread injury to the class simply cannot be proven through common evidence.  Under a framework that properly accounts for both merger-related price increases and declines, some Whole Foods shoppers may have paid more for their baskets of products than they would have without the merger, while others may

have paid less – depending upon what mix of products each purchased.  Determining what proportion of shoppers suffered net harm due to price movements caused by the merger therefore requires an analysis of each putative class member's purchases at Whole Foods during the class period and the amount by which the price of each product changed as a result of the merger. Since the collection of products purchased by a particular customer is only provable by individual evidence – that is, evidence that varies from person to person – it would be impossible to establish "widespread injury," or even determine who belongs in the class, with common proof.  See, e.g., Scott v. First Am. Title Ins. Co., 276 F.R.D. 471, 483 (E.D. Ky. 2011) (where each customer's transaction must be evaluated to show injury, "the level of individualized inquiry required … is cancerous to a finding of commonality; there is no common method for resolving to whom Defendant is liable."); Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977) ("[W]here the issue of damages and impact does not lend itself to such a mechanical calculation, but requires 'separate mini-trial[s]' of an overwhelming[ly] large number of individual claims, courts have found that the 'staggering problems of logistics' thus created 'make the damage aspect of (the) case predominate,' and render the case unmanageable as a class action.") (internal quotation marks omitted); see also Trans. at 94-98 (acknowledgement by Capps that determining what particular consumers purchased requires individualized evidence such as receipts, credit cards records, and scanner data capturing customer transactions).

Because a showing of widespread injury to the class is necessary for certification and Plaintiff has failed to propose a means of establishing this through common evidence, the Court finds that individual questions predominate over common ones in this case.  The proposed class, accordingly, cannot be certified under Rule 23(b)(3).

2.  *Vagueness of Plaintiff's Proposed Methodology*

Defendant also argues that the methodology offered by Capps is too vague for the Court to even evaluate.  <u>See</u> Surreply at 7-9.  The Court concurs.  Capps says he plans to run a regression analysis to determine which products increased in price and by how much as a result of the merger.  Yet, admittedly, he cannot simply compare before-and-after prices; instead, he has to account for other non-merger factors that may have affected price.  Capps's expert report mentions some "possible explanatory factors" that he might use in his regression – *e.g.*, wholesale cost, advertising or sales promotional activities, seasonality, competition from other stores, average or median disposable income of the customer base – but his proposal is tentative at best.  Capps Expert Report, ¶ 57.  He notes that "[t]he result of merits discovery may further refine this assessment and provide the basis for including additional explanatory factors to be considered as part of any regression model."  <u>Id.</u>, ¶ 58.  In other words, not only had Capps not yet performed a single regression, but also he could not even tell the Court the precise analyses he intended to undertake.  <u>See</u> Trans. at 19-28, 63-64, 158-59.

While Capps's proposal may have satisfied the <u>In re Nifedipene</u> standard, where an expert opinion passed muster as long as the suggested methodology amounted to more than "no method at all," 246 F.R.D. at 369, most courts now apply more scrutiny to experts at the class certification stage.  The Third Circuit has stated that "[w]eighing conflicting expert testimony at the certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands."  <u>In re Hydrogen Peroxide</u>, 552 F.3d at 323; <u>see also</u> <u>Blades</u>, 400 F.3d at 575 ("[I]n ruling on class certification, a court may be required to resolve … [expert] disputes.").  "A party's assurance to the court that it intends or plans to meet the requirements is insufficient."  <u>In re Hydrogen Peroxide</u>, 552 F.3d at 318.

Rule 23 was amended in 2003, and several courts have interpreted these amendments to permit closer scrutiny of and require more certainty for class certifications than before.  See, e.g., In re Initial Public Offering Securities Litigation, 471 F.3d 24, 39 (2nd Cir. 2006) (The 2003 Amendments "arguably combine to permit a more extensive inquiry into whether Rule 23 requirements are met than was previously appropriate.")  Among other things, the amendment changed the timing for class certification decisions.  The earlier version required courts to make a decision on class certification "as soon as practicable after commencement of an action," Fed. R. Civ. P. 23(c)(1)(A) Advisory Comm. Notes, 2003 amends., whereas the amended rule instructs the court to do so "[a]t an early practicable time after a person sues or is sued by a class representative."  See Fed. R. Civ. P. 23(c)(1)(A).  Additionally, the current version eliminates language permitting a court to conditionally certify a class, and the Advisory Committee Notes to the rule indicate that a court should not certify a class until it is satisfied that the requirements of Rule 23 have been met.  Though these changes may appear minor, they have contributed to a shift toward stricter review of expert evidence with respect to class certification decisions.  See, e.g., In re Hydrogen Peroxide, 552 F.3d at 320 ("While [the 2003] amendments do not alter the substantive standards for class certification, they guide the trial court in its proper task – to consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class."); Oscar Private Equity Invs. v. Allegiance Telecom, Inc., 487 F.3d 261, 267 (5th Cir. 2007) (discussing evolution of class certification standards in light of 2003 amendments), abrogated on other grounds by Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179 (2011).

Although this Circuit has not articulated clear standards for evaluating expert evidence at the class certification stage, the Court agrees with other courts that the Rule calls for careful and

searching analysis of all evidence with respect to whether Rule 23's certification requirements have been met, including expert opinions. "[N]eglecting to resolve disputes between experts 'amounts to a delegation of judicial power to the plaintiffs, who can obtain class certification just by hiring a competent expert.'"   In re Hydrogen Peroxide, 552 F.3d at 323 (citing West v. Prudential Sec., Inc., 282 F.3d 935, 938 (7th Cir. 2002)).  The Court, therefore, finds that Capps's proposed methodology is not sufficiently developed to meet Plaintiff's burden of showing that common questions predominate over individual ones, as required by Rule 23(b)(3). See, e.g., Weisfeld v. Sun Chemical Corp., 84 Fed. Appx. 257, 264 (3rd Cir. 2004) (expert report that "contains only bare conclusions and a statement that the expert 'proposes' to use a multiple regression model (which may not take into account all relevant variables) .... is insufficient to satisfy the predominance requirement of Rule 23(b)(3)"); In re Graphics Processing Units Antitrust Litigation, 253 F.R.D. 478, 492 (N.D. Cal. 2008) (in recent antitrust cases, "many courts have exhibited greater willingness to test the viability of methodologies that experts propose to show class wide impact and injury using common proof, and are increasingly skeptical of plaintiffs' experts who offer only generalized and theoretical opinions that a particular methodology may serve this purpose without also submitting a functioning model that is tailored to market facts in the case at hand.").

   B.  Rule 23(b)(2)

   Even if she does not satisfy the requirements of Rule 23(b)(3), Plaintiff briefly argues that the proposed class can instead be certified under Rule 23(b)(2).  See Mot. at 35-36.  That subsection permits class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2). Plaintiff contends that the class meets these criteria simply because "Whole Foods has refused to

allow competition from Wild Oats" and the injury sustained by the class is "ongoing." Mot. at 36.

Defendant responds that certification under 23(b)(2) is inappropriate because that subsection does not apply when "'the appropriate final relief relates exclusively or predominantly to money damages.'" Opp. at 37 (quoting Fed. R. Civ. P. 23 Advisory Comm. Notes, 1966 amends.). The Supreme Court has recently made clear that Defendant's position is correct. Although the Court had previously "expressed serious doubt about whether claims for monetary relief may be certified under [Rule 23(b)(2)]," it held just last year that they may not -- unless the monetary relief is merely "incidental to the injunctive or declaratory relief." Wal-Mart, 131 S. Ct. at 2557 (internal citation omitted). When "each class member would be entitled to an individualized award of monetary damages," class certification is not permitted under Rule 23(b)(2). Id. This represents no change in the law as interpreted by the D.C. Circuit. See, e.g., Eubanks, 110 F.3d at 95 ("The underlying premise of (b)(2) certification – that class members suffer from a common injury that can be addressed by classwide relief – begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries."); Richards v. Delta Airlines, Inc., 453 F.3d 525, 530 (D.C. Cir. 2006) (class certification not permitted under Rule 23(b)(2) when requested injunctive or declaratory relief merely reframes damages claim).

It is clear that money damages are at the heart of this case. The injury alleged is financial loss due to overcharges resulting from the merger. This is economic harm, for which Plaintiff seeks a remedy of money damages for herself and the putative class members. While Plaintiff also requests "appropriate equitable, injunctive, and declaratory relief," she never specifies the form such relief would take. Compl. at 29; see also Mot. at 35-36. In any event, the equitable

21

relief is clearly incidental to the monetary relief, not the reverse.  As such, Plaintiff's request for class certification under 23(b)(2) is easily dismissed.

**IV.     Conclusion**

For the foregoing reasons, the Court believes that class certification is not appropriate in this matter.  An Order denying Plaintiff's Motion and setting a status hearing will issue this day.